### AT THE

## MARCH SESSION 1868, IN BOSTON.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. EBENEZER R. HOAR,
Hon. HORACE GRAY, Jr.,
Hon. DWIGHT FOSTER, } Justices.
Hon. JOHN WELLS,
Hon. JAMES D. COLT,

## SUFFOLK COUNTY.

WILLIAM MINOT, JR. *vs.* JULIA B. PAINE & others.

If a fund held in trust to pay the income to one until his death, and then convey the capital to another, includes shares in the stock of a corporation, shares of additional stock distributed to the trustee as a lawful dividend thereon accrue as capital, although they represent net earnings of the corporation.

BILL IN EQUITY, filed December 3, 1867, by the trustee under the will of Hannah F. Lee, to obtain the direction of the court concerning the application of certain shares in the stock of the Chicago, Burlington and Quincy Railroad Company, a corporation under the law of Illinois, and the Western Railroad Corporation, a corporation under the law of Massachusetts, distributed by said companies respectively to the trustee, by way of dividend on certain other shares of their respective corporate stocks belonging to the capital of the trust fund.

The bill set forth that the will of Mrs. Lee was duly proved and allowed in the probate court for Suffolk on January 22, 1866, and declared a trust in the plaintiff, which he duly assumed, to hold and manage the estate of the testatrix as to him might seem prudent and judicious, with "full powers of sale and conveyance and change of investment in the management of the trust estate," and pay the net income thereof, as often as convenient, to her granddaughter Julia Bryant (since become by marriage Mrs. Paine) during her life, to her sole and separate use; and, on the death of said Julia, to convey the same in fee to such persons and on such terms as by her last will and testament, executed after her majority, she might appoint; and, in default of such appointment, or in event of her death during her minority, then to her issue, if any; and, in default of such issue, or of such appointment, then to the grandnieces of the testatrix, children of George L. Schuyler; and it set forth that the said Julia was still a minor.

It further set forth that on June 11, 1866, the trustee purchased, as an investment of part of the capital of the trust fund, two hundred shares in the stock of the Chicago, Burlington and Quincy Railroad Corporation, for $23,150, being at the rate of about sixteen per cent. premium on their par value, which was $100 each; that thereafter on said shares he received from said company semi-annually, in May and November, cash dividends of five per cent. on their par value, until on September 17, 1867, he received another cash dividend of like amount, and at the same time a stock dividend of twenty per cent., to wit, forty shares of additional stock of the same par value, which two last dividends were declared by the directors of the company on August 21, 1867, by the following votes:

" *Voted*, to make a dividend of five dollars per share, the company to assume the United States' tax, payable September 15 to stockholders of record the 24th inst., after which date the transfer books will be closed until September 18.

" *Voted, also*, to distribute to stockholders of the 24th inst. one new share for every five held, to represent improvements on the road, construction of the Burlington Bridge, &c.; each holder

of a fraction to receive a full share on paying up the balance to par."

It alleged that the plaintiff was informed and believed that said dividend of stock was made in part out of the earnings of the road accumulated before his purchase of the two hundred shares; but that he was ignorant what proportion of the expenditure represented by the stock dividend was made from earnings of the road accumulated before said purchase, and what from earnings accumulated afterwards; that he sold the forty shares distributed to him for $125 each, being at the rate of twenty-five per cent. premium on their par value, and was holding in his hands the proceeds of the sale, $5000; and that at the time of the filing of this bill the market value of said shares was about thirty-five per cent. above their par value.

The bill also set forth that, from the time of the probate of the will, the plaintiff held, as part of the capital of the trust fund, ten shares in the stock of the Western Railroad Corporation, which shares were charged to him in the inventory at the sum of $1400, or at a premium of forty per cent. on their par value, which was $100 each; and that, on July 12, 1867, he received from said corporation three additional shares of stock therein, as a dividend, pursuant to the following vote of its directors passed in June 1867:

"*Voted*, that the capital stock of this corporation be increased by the issue of 20,000 new shares, and that the treasurer be directed to distribute, on and after July 10, to the stockholders of record at the close of business on Saturday, the 8th inst., the number of full shares to which they may be respectively entitled, in the proportion of three new to ten old shares."

It recited that another vote, passed by the directors at the same time, made provision for fractional rights to stock in cases in which numbers of shares were held not evenly divisible by 10; and that both votes were passed in conformity with the recommendations of the report of a committee of directors to the full board on June 4, which set forth that " the large contingent fund of the corporation, which to a great extent has already gone into the construction of the road, the virtual ex-

tinguishment of the debt of $1,000,000 to the city of Albany . by the sinking fund provided for its payment, releasing the income of the road from the payment of interest on these bonds and contribution to the fund, aside from other considerations which might well be urged, but which it is not necessary now to present, fully require, as in justice to the stockholders, that 20,000 new shares of stock shall be issued and distributed according to the provisions of the votes " above named.

It alleged also that the plaintiff was holding " said three shares as a part of said trust fund ; " and that at the time of the filing of the bill the market value of said shares was forty-five per cent. above their par value.

The bill further alleged that the *cestui que trust*, Mrs. Paine, claimed to be entitled to receive said stock dividends, or the proceeds thereof, as income of the trust fund, but that the trustee was " in doubt whether said dividends of said shares in said two corporations are income of the trust fund to be paid to the *cestui que trust*, or are capital to be retained by him and accounted for in the settlement of his trust."

The prayer was for the direction of the court " as to the true nature of said dividends of stock, and whether they are capital or income of the said trust fund, and as to the manner in which said trust in the particulars aforesaid may be safely and properly executed."

Mrs. Paine and the children of George L. Schuyler were made parties to the bill; and the former, by her guardian appointed *ad litem*, filed an answer admitting the truth of the allegations of the bill, and further setting forth " that said Western Railroad Corporation had, prior to June 8, 1867, expended from its net earnings, for purposes of permanent improvement of the road, namely, for the purposes indicated in the report of " the committee of the directors, as recited in the bill, " an amount equal to or exceeding the par value of the stock dividend made by said corporation ; and that the said Chicago, Burlington and Quincy Railroad Company had, prior to August 24, 1867, expended from its net earnings for the permanent improvement of the road, additions to the road, and the purchase of property

now held by said company, and which yields an income to it, an amount equal to or exceeding the par value of all the stock dividends made by said corporation;" and finally alleging that, "as between herself and the other defendants who are contingently entitled in remainder, the shares divided by the said two corporations, representing the sums taken from the income or dividend fund for the relief of the capital of said corporations, and for the permanent improvement of their roads, are, in justice and in law, income, and not capital, of the trust fund."

The answer of the latter corresponded with this answer, except that it alleged that " the shares in the capital stock of the said two corporations issued as aforesaid are, in justice and in law, not income, but capital, of the trust fund."

It was also admitted by all the defendants "that the corporations mentioned in the plaintiff's bill were, at the time of making the distributions of stock therein set forth, authorized by law to increase their capitals by issuing shares to an amount exceeding the shares so distributed by them, such authority being given in general terms, without special provisions or limitation as to the time, method or object of such increase."

The case was reserved by *Chapman*, C. J., on the bill and answers, and the aforesaid admission of the defendants, for the determination of the full court.

*F. V. Balch*, for Mrs. Paine.

*A. G. Sedgwick*, for Schuyler's children.

CHAPMAN, C. J.    Under the will of Mrs. Lee, the shares in question were held by the trustee to pay over the net income thereof, as often as convenient, to Mrs. Paine, during her natural life, for her sole and separate use, &c. ; and, on her death, to transfer and convey the same in fee to such persons, and on such terms, as Mrs. Paine, by her last will and testament, executed after her majority, may direct and appoint; and, in default of such will executed after her majority, or if she shall die a minor, then to her issue, if any, surviving her; and, in default of such issue or such will, then to the issue surviving her of the said George L. Schuyler; the trustee having full powers of sale and conveyance and change of investments in the management of the trust estate.

The fact that the shares in the Western Railroad Corporation were received by the trustee as part of Mrs. Lee's estate, and that the shares in the Chicago, Burlington and Quincy Railroad Company were purchased by him as an investment, is not material to the present case.

In addition to the cash dividends which were declared by the directors of the Chicago, Burlington and Quincy Railroad Company, a dividend of twenty per cent. in stock was made in September 1867, and received by the trustee, which he sold for $5000, being twenty-five per cent. above the par value of the shares. And, in July 1867, the directors of the Western Railroad Corporation made a stock dividend, three shares of which came to him.

The question presented to the court is, whether these stock dividends, or either of them, are to be treated by him as income, belonging to Mrs. Paine, the tenant for life ; or as capital, to be kept for the legatees of the stock in remainder, and of which Mrs. Paine is entitled to receive the income during her life.

The dividend made by the Chicago, Burlington and Quincy Railroad Company is stated in the vote of the directors to be made to represent expenditures for improvements on the road, the construction of the Burlington Bridge, &c.; and the pleadings admit that it was made from the net earnings of the road, for the permanent improvement of the road, and additions to the road, and the purchase of property now belonging to the road which yields a net income; and that the dividend made by the Western Railroad Corporation was made from its net earnings for purposes substantially similar. The votes are stated in the bill ; but it is not necessary to refer to them more particularly.

The court do not regard the fact that the dividends were made from the net earnings of the roads as material. The net earnings of a railroad corporation remain the property of the company as fully as its other property, till the directors declare a dividend. A shareholder has no title to them prior to the dividend being declared. In most of our prosperous railroad corporations, the directors apply a considerable portion of their net

income to the laying of additional tracks, the building of new depots, the increase of their rolling stock, and sometimes to the purchase of land which they deem important to the accommodation of their business, or to other permanent improvements of the road; and they have discretionary power to do so. It is true that they may abuse their power, and refuse to make any dividends, though their net income may be large; and apply their funds to the permanent improvement of the road, and thereby deprive a life tenant of all benefit from the shares, and reserve the whole income for the benefit of the remainderman. But in the present case it is not alleged that there·has been any abuse of power; and it need not be decided whether, in case of such abuse, the trustee can protect the interests of the tenant for life in any other manner than by selling the shares and investing the trust fund in some other way by which he may obtain a reasonable income.

It is obvious that, if the directors had made no stock dividend, but had invested the income in permanent improvements, making no increase of the number of shares, the improvements would have been capital, belonging to the legatees in remainder. So, if they had thus invested it, and, instead of increasing the number of shares, had increased their par value, the shares would have been mere capital, and not income, as to the shareholders, though increased in value by the application of the net income of the road to that purpose. So, when they increase the number of shares, each share of all the stock in the corporation is in its nature capital. The new shares take their place among the old ones; and each of the old shares thereby becomes a less proportion of the whole stock than it was before, and is entitled to a less proportion of dividends declared than it was before. It may be that dividends are less per cent. than they would otherwise have been, and in such case the old stock is diminished in value, and the interest of the remainderman is injuriously affected. But, on the other hand, the effect may be, by increasing the business of the road, to increase the dividends and the market value of the old stock.

But neither courts nor trustees can investigate such matters

with accuracy; and in many cases no investigation can be made. A trustee needs some plain principle to guide him; and the *cestuis que trust* ought not to be subjected to the expense of going behind the action of the directors, and investigating the concerns of the corporation, especially if it is out of our jurisdiction. A simple rule is, to regard cash dividends, however large, as income, and stock dividends, however made, as capital. The court are of opinion that this rule is more in conformity with the legal and equitable rights of shareholders than any other that has been suggested. It is also in conformity with the decisions of the court, so far as the subject has been considered.

In *Reed* v. *Head*, 6 Allen, 174, the cash dividends made by a land company were held to belong to the tenant for life, though they were derived from the sale of its real estate, which was its capital; this being its only method of earning dividends. On the other hand, where a gas light company increased the number of its shares, the right of a trustee to subscribe for new shares, which was a valuable right, was held to be the property of the legatee in remainder, and the sum realized by the sale of the right was directed to be invested for his benefit, the income to be paid to the legatee for life. *Atkins* v. *Albree*, 12 Allen, 359.

The subject has been much discussed by other courts; and, as it has been fully and ably argued, and is practically very important, it may be well to refer to the authorities.

The earlier English decisions have been unsatisfactory to the profession, and to the English courts. In *Brander* v. *Brander*, 4 Ves. 800, the bank had advanced to the government one million sterling, and had received for it £1,125,000 of five per cent. annuities. These were distributed among the stockholders. The testator had devised his bank stock to the plaintiff, subject to an annuity for life. Lord Chancellor Loughborough held that the dividends out of the £1,125,000 were accretion to the capital and belonged to the remainderman, and that the tenant for life was entitled to receive only the income which it might earn. He said the same thing had been done when the bank increased their dividends, on the ground that there had been a gradual

saving. To apply such a rule to the cash dividends made by corporations in this country, where dividends are so variable in amount, would be unreasonable and absurd.

In *Paris* v. *Paris*, 10 Ves. 185, an extra dividend was declared by the bank from the profits of the last half year. Lord Eldon decided the case on the authority of *Brander* v. *Brander*, and said it made no difference whether the dividend was in money or in stock. But he was unable to answer the argument made by Sir Samuel Romilly for the life tenant, or to state any satisfactory principle on which the two cases rested; and seemed to be dissatisfied with the result. In *Clayton* v. *Gresham*, 10 Ves. 288, the same rule was adopted in respect to an extraordinary dividend of profits made by the bank among the proprietors of the stock. In *Witts* v. *Steere*, 13 Ves. 363, Lord Erskine adopted the rule, but expressed doubts as to the correctness of the principle. In *Barclay* v. *Wainwright*, 14 Ves. 66, Lord Eldon, after reviewing the former case, decreed to the tenant for life an extra dividend of five per cent., made by the bank. This case was cited with approbation by Sir Thomas Plumer, V. C., in *Norris* v. *Harrison*, 2 Madd. 279.

In *Hooper* v. *Rossiter*, McClel. 527, Lord Chief Baron Alexander said it seemed clear from all the cases, from the first to the last, that, wherever the addition was made clearly and distinctly as a dividend only, the tenant for life was to have it; but, wherever it was not clearly given as a dividend, it was considered as an accretion to the capital, divisible amongst the proprietors.

In *Price* v. *Anderson*, 15 Sim. 473, an increased dividend made by an insurance company was held to be income. Shadwell, V. C., said that the company might have declared, if they had thought proper to do so, that a part should be dividend and a part capital. But, as they had declared the whole to be dividend, he held that it belonged to the tenant for life. He refused to go behind the action of the company, and recognized their discretionary power. This discretionary power of a company over its earnings is certainly a very essential element in its bearing upon the respective rights of tenant for life and remainderman.

In *Bates* v. *Mackinley*, 31 Beav. 280, dividends and bonuses earned before the testator's death, but declared afterwards, were held to be income belonging to the tenant for life. In *Johnson* v. *Johnson*, 15 Jur. 714, a bonus, or increased dividend of £10 per share, in addition to the usual dividend, was held to be income, and not capital. In *Murray* v. *Glasse*, 17 Jur. 816, dividends on Mexican Mint shares, and also bonuses declared out of profits, were held to belong to the tenant for life. In *Cuming* v. *Boswell*, 2 Jur. (N. S.) 1005, in the house of lords, bonuses were held to be income; and the earlier cases cited above were spoken of by Lord Cranworth as not resting on very solid ground.

*In re Barton's trust*, Law Rep. 5 Eq. 238, the testator left five shares in the India General Steam Navigation Company. The company added three new shares to the original five, out of the earnings of their steamers for the last half year, to be applied to the cost of new steamers; and the new shares were issued to represent the money so applied. A dividend was made of the remaining portion of the earnings. Vice-Chancellor Wood held that the new shares were capital and not income; that the company had power to make such an appropriation of a part of their profits; and that a shareholder was bound by the action of the majority.

*Clive* v. *Clive*, Kay, 600, *Plumbe* v. *Neild*, 6 Jur. (N. S.) 529, and *Wright* v. *Tuckett*, 1 Johns. & Hem. 266, may be referred to, but do not need to be noticed particularly.

From this review of the English cases, it appears that the case of *Brander* v. *Brander*, and the principle on which it rests. are regarded in England as unsatisfactory; and that there is no reason why we should follow it.

The cases cited from New York have been decided in their supreme court, and not by their highest tribunal. In *Clarkson* v. *Clarkson*, 18 Barb. 646, it was held that extra dividends were to be regarded as profits; but bonds or certificates given by a railroad for the purpose of consolidation with another road were capital, and belonged to the remainderman. James, J., expresses dissatisfaction with *Brander* v. *Brander*, and the cases which follow it. In *Simpson* v. *Moore*, 30 Barb. 638, the subject

of the bequest was bank stock. The charter of the bank ex-
pired, and a dividend of eighteen per cent. was declared, with
an option to stockholders to invest it in a renewed charter. It
was held that the dividend was profits, except so far as it im-
paired the capital. So far as it did that, it was directed to be
retained as capital, and the balance to be paid to the tenant for
life. These cases do not differ from the views we have ex-
pressed.

In *Earp's case*, 28 Penn. State, 368, the capital stock was
increased by the creation of new shares. A dividend of the
shares was made, and they were paid for out of the profits of the
business. It was held that the additional shares should go to
the legatee for life as income. But in that case the fact that the
corporation has, within the limits of its charter, the power to
withhold dividends, and use all its funds in such a way as merely
to increase its property, is not discussed.

On this point the case of *Pratt* v. *Pratt*, 33 Conn. 446, is per-
tinent. The court held that, where the directors of a manufac-
turing corporation were about to invest their income in the
erection of new buildings and machinery, and enlarge their busi-
ness within the limits of their chartered authority, a case was
not made for equitable interference by injunction in favor of a
minority of dissenting stockholders.

This case illustrates the principle applicable to the present
case. The money in the hands of the directors may be income
to the corporation ; but it is not so to a stockholder till a divi-
dend is made; and, where the company invest it in buildings
and machinery, or in railroad tracks, depots, rolling stock, or
any other permanent improvements, for enlarging or carrying
on their legitimate business, it never becomes income to the
shareholder. The investment becomes an accretion to the cap-
ital ; and it is equally so whether they increase the number of
shares, or the par value of shares, or leave the shares unaltered.
Or if the number of shares is increased for purposes merely
speculative, it is an increase of capital stock, and not of income ,
and it would be practically unwise for courts to go behind the
action of the company and attempt to ascertain how they came

by the funds out of which they declare either cash or stock div dends.

As the corporation is the legal owner of the property, and has power, within the limits of its charter, to give to the sharehold· ers either an increase of income or an increase of capital, out of the money in its hands, according to the discretion of its directors, it would seem to follow that an increase of capital should be kept for the remainderman, and an increase of income should be paid to the tenant for life. This rule appears to be in conformity with the intention of the testator who gives personal property in this manner. He is held to have the interest of the successive takers equally in view. *Kinmonth* v. *Brigham,* 5 Allen, 270.

The equitable rights of the *cestuis que trust* will thus coincide with the legal rights of the legal holder of the stock, who holds his shares as his capital, and his cash dividends as his income from that capital. As to him, a stock dividend is an accretion to his capital; and there is nothing to show that the testator intended that it should be otherwise as between the successive takers of his bounty.

*Decree that the new shares be held as capital for the legatee in remainder; the income to be paid to the legatee for life.*