WILLIAM S. LELAND & another *vs.* OLIVE E. HAYDEN & others.

A fund bequeathed in trust to pay the income to one until his death and then the capital to another, included shares in the stock of a railroad corporation. This corporation, out of its net earnings accumulated during the term of the trust, bought in the market part of its own stock; invested other such earnings, to an amount equal to twenty per cent. of the par value of the residue of its stock, in property a large portion of which was not required for the use and improvement of the railroad; and voted to create a number of new shares, of the same par value, to be issued and disposed of as the directors should deem proper. The directors then voted to offer to the individual stockholders the right to take part of the new stock at par, in the proportion of twenty per cent. of a new share for each old share held by the taker, and that, if any individual stockholder should not avail himself of his right, they would dispose of it as they might see fit; and at the same time, after a preamble reciting that "whereas there is a large amount of surplus earnings invested in the shares and property of this company, which the stockholders have instructed the directors to divide," they declared a dividend of forty per cent. on the old shares held by individual stockholders, payable "twenty per cent. in the shares of the company which were purchased and are held by this corporation in its corporate capacity, and twenty per cent. in cash, derivable from the shares which the stockholders entitled to this dividend shall respectively pay for the new stock taken .by them under the terms of the preceding vote." *Held*, that, of the avails of the dividend to the trustee, so much as was derived from the first twenty per cent. was payable as income to the life tenant; and so much as was derived from the second twenty per cent. accrued to the capital of the trust fund.

BILL IN EQUITY filed September 30, 1867, by trustees under the will, proved and allowed October 13, 1855, of Whiting Hewins, late of Roxbury, deceased, to obtain the direction of the court in respect to the application; as between a tenant for life and remaindermen, of a dividend declared December 15, 1863, in addition to a regular semiannual dividend of five per cent., by the Old Colony & Newport Railway Company, a corporation under the law of this Commonwealth, ninety shares of whose capital stock constituted part of the original trust fund created by the will.

The bill alleged that the trust, on which this fund was bequeathed by the testator, was for the trustees " to pay to his widow an annuity of $800 for and during her life, and to pay the balance of the income of said trust estate to his children and the survivors or survivor of them, and on the death of the last survivor to pay, transfer and convey the trust fund to the heirs at law of said last survivor; " that before December 15, 1863, the testator's widow died, and also all his children except Olive E., wife of Isaac Hayden; that there never were any grandchildren of the testator; and that the presumptive heirs at law of Mrs. Hayden were two uncles and an aunt, whom it named.

It further alleged that the original investment of part of the trust fund in ninety shares of the capital stock of the Old Colony & Newport Railway Company had never been changed; " that in December 1863 said company was itself the holder of certain shares of said stock, which it had purchased, at less than par value, from its surplus income; that on the 15th day of said December said company declared an extra dividend of forty per cent., payable one half in said shares and one half in cash, as more fully appears by certain votes passed by said company; and that said dividend was in addition to the regular semi-annual dividend paid by the company." The votes thus mentioned were annexed to and made part of the bill, as follows:

" *Whereas,* the stockholders of this company, at their meeting held on October 27, 1862, created 8849 shares of the capital stock of the company, of the par value of $100 each, which they authorized should be issued and disposed of at such time or times and on such terms and in such manner as the directors of this company should in their judgment think proper, *Voted,* that this right of taking 5157 shares of the above created shares, at the price and rate of $100 per share, payable to the treasurer of this company, at his office in Boston, on the 1st day of January next, be offered until that day to those who, at the close of business hours this day, appear by the books of this company to be its shareholders, (not including this company in its corporate capacity as a shareholder,) said shareholders to have the priv-

ilege of taking on the above terms twenty per cent. of a new share for each old share of stock they respectively may have in this company ; and if any stockholder does not avail himself of the privilege offered him of taking and paying for the proportion of new stock he may be entitled to receive on the terms above stated, on or before the 9th day of January next, the directors will dispose of such privilege to such person or persons, in such manner and on such terms as they may here-after order.

" *Whereas*, there is a large amount of surplus earnings in-vested in the shares and property of this company, which the stockholders have instructed the directors to divide, *Voted*, that a further and extra dividend of forty per cent. be and it is hereby declared on the 25,783 shares of the capital stock of this company held by its shareholders at the close of business hours this day, to be paid by the treasurer on the 1st day of January next, in the following manner, viz : twenty per cent. in the shares of the company which were purchased and are held by this company in its corporate capacity, and twenty per cent. in cash, derivable from the shares which the stockholders entitled to this dividend shall respectively pay for the new stock taken by them under the terms of the preceding vote."

The bill further alleged that the original trustees (who continued to hold the trust until they died, some time after the time of this dividend, and of whom the plaintiffs were successors) " invested the whole of said extra dividend in the stock of said company, and held a separate certificate of thirty-six shares as representing said extra dividend; that no part of said extra dividend was ever paid over as income under said will, but all the dividends on said new stock have been paid to Mrs. Hayden as the only survivor of the testator's children ;" that the plaintiffs, when they assumed the trust, " received all said certificates of stock, and caused new certificates to be issued to themselves in their own names as such trustees, still keeping the thirty-six shares representing said extra dividend in a separate certificate that Mrs. Hayden claims that the amount of said extra dividend ought to have been paid to her by said former trustees as in-

come according to the terms of said will, and also claims that she ought now to have said new shares transferred to her as representing income to which she is by the terms of said will entitled;" but that the plaintiffs were unwilling at their own risk to transfer any of said new shares to her, and therefore prayed for the direction of this court, and that Mrs. Hayden with her husband, and her said presumptive heirs, might be cited to answer and "show whether said new shares ought or ought not, in whole or in part, to be transferred" to Mrs. Hayden.

Of the parties thus joined as defendants, only Mrs. Hayden and her husband filed an answer. They, answering jointly, admitted the truth of each and every allegation of the bill, and continued thus :

" And further answering, upon information and belief they say, that the dividend declared by the Old Colony & Newport Railway Company, as set forth in the bill, so far as the same was payable in shares of the company, was declared and paid out of shares which the company had purchased since the death of the testator and had paid for wholly out of their surplus net earnings and income which accrued subsequently to the death of said testator and during the continuance of the trust created by the will in favor of Olive E. Hayden ; and that the same was in fact a dividend solely of such accumulated income invested in said shares.

" And as to the dividend declared and paid in cash, as set forth in the bill, these defendants in like manner allege that the corporation accumulated the amount thereof out of their net income and earnings after the death of the testator, and during the continuance of said trust; and that, at the time of declaring said dividend, the amount thereof was actually invested by the corporation in lands and other property, a large portion of which was held by the corporation as an investment, and was not required for the use or improvement of its railway.

"And these defendants claim that the eighteen shares of stock in the corporation received by the trustees under the will of Whiting Hewins directly as a dividend upon the ninety shares by them originally held, and the eighteen shares of said stock

wherein the trustees invested the cash dividend of $1800 by them received, are income of the capital of the trust fund, and that Olive E. Hayden is entitled thereto; and pray that the plaintiffs be directed by decree of this court to convey the same to Olive E. Hayden as income of the trust fund."

By agreement of the plaintiffs and the answering parties, the case was reserved by *Colt*, J., on the bill and answer, for the determination of the full court.

*W. G. Russell*, for Mrs. Hayden. This case presents the question considered in *Minot* v. *Paine*, 99 Mass. 101, and *Daland* v. *Williams*, 101 Mass. 571, as to the disposition to be made, between a tenant for life and remaindermen, of extra dividends declared by a corporation in whose stock trust funds are invested. It is obvious that the dividend now in question, though declared by one vote or series of votes, is in fact two dividends of twenty per cent. each, and that these several dividends, or parts of one dividend, may each stand upon a somewhat different footing. Accepting, and applying to the peculiar facts of the case at bar, the plain rule laid down in those cases, that cash dividends are to be regarded as income and stock dividends as capital, and the principles upon which that rule is there maintained, it is contended that this tenant for life is entitled to both.

1. The dividend of twenty per cent. declared payable in shares of the corporation was not in substance, or in the ordinary sense of the phrase, or within the principle of the rule in *Minot* v. *Paine*, a stock dividend, but was in fact a cash dividend or its equivalent. The corporation had accumulated, during the term of the trust, out of its net earnings, cash funds, which from time to time its directors had invested in the purchase of its own shares in the market at a price below their par value. By vote of the corporation, they were instructed to divide these shares among the stockholders; and in pursuance of such instructions a dividend was declared, giving one such share to each holder of five shares of the remaining stock.

This transaction wants the essential elements of a stock dividend as found in ordinary cases, and in the cases previously determined by this court. In those cases, new stock was created

for the purpose of the dividend. Here no new stock was made, but a portion of the original stock, which had been already paid for in full to the corporation, and repurchased by it, was divided. This distinction is vital; for in the ordinary case, where the number of shares is increased, each share becomes a less proportion of the whole stock than it was before; so that, unless the new shares are added to the old in the hands of the trustee as capital, the original number of shares represents a smaller proportion of the whole corporate property than it did before the dividend; while, so far as the dividend now under consideration is concerned, the number of shares of the corporation is unaffected by it, and the trustee, by retaining only his original number of shares, retains the same fractional interest in the whole corporation, its franchise and property, which he previously had, just as completely as he would do in the ordinary case by receiving the stock dividend and adding it to his capital.

The funds invested in the shares divided had not, as in *Minot* v. *Paine* and *Daland* v. *Williams*, been applied to the permanent improvement, construction or equipment of the railroad or property of the corporation; they never represented property intended for the carrying on of the legitimate business of the corporation or the earning of its dividends. The shares always represented accumulated earnings; they were in their nature a temporary investment; they were convertible at any time, without detriment to the business of the corporation, into the cash from which they were derived, and divisible among the stockholders either *in specie* or when so converted. The power of the directors to reconvert them into cash and divide that cash cannot be questioned. That they were divided *in specie* does not vary the case in substance or principle. The investment and the dividend declared from it stand upon the same footing as if they had been made in other securities; for example, in shares of another corporation, in bonds of the United States, or in treasury notes.

2. The second dividend of twenty per cent. was in form a cash dividend; and the facts found by the pleadings do not show that it was otherwise in substance. It passes, therefore

to the tenant for life. The power of the directors or of the corporation to determine whether accumulated earnings shall go to the tenant for life or to the remainderman, by the form in which they see fit to make the division, is admitted by the whole line of authorities. *Paris* v. *Paris*, 10 Ves. 188, 190. *In re Barton's Trust*, Law Rep. 5 Eq. 238, 245. By the same rule which holds that newly created stock, representing accumulated earnings invested in the plant of the corporation, though divided among stockholders, is capital, because capitalized by the corporation, it must also be held that cash, however derived, when distributed in the form of a dividend, is income, and not capital.

Giving full effect to the decision in *Daland* v. *Williams*, the principle there established goes no further than this : that in determining whether a dividend is a cash dividend or a stock dividend, the court will look through the form to the substance of the transaction ; and that, though a dividend be declared nominally in cash, yet if, by reason of the circumstances attending it, it is in fact payable and receivable only in new stock created for the purpose, it is in law a stock dividend, and to be distributed as such under the rule in *Minot* v. *Paine.*

The present case is distinguishable from *Daland* v. *Williams* in several particulars. There the dividend was not in terms made payable in cash. On the contrary, the treasurer was authorized only to receive the dividends in payment for the new shares created by the accompanying vote, and "to issue certificates of stock for said dividend." The corporation evidently contemplated no other contingency than the taking of the stock by its stockholders. No provision was made for the sale of the shares which should not be so taken, nor for the sale of the rights to such shares. In the present case, the dividend was in terms made payable in cash ; and it was contemplated by the corporation that it might be so received by the stockholders. The time for payment of the new stock was by the vote extended to January 9, while the dividend was payable in cash January 1. A stockholder might therefore receive his dividend in cash, and subsequently invest it in stock. The bill alleges the transaction in this form. The original vote of October 27, creating the new

shares, provided that they might be disposed of at such time or times, and on such terms and in such manner as the directors should think proper ; and in this manner the shares which should not be taken by the stockholders for their dividends were provided for. And the right to take at par the new shares not taken by stockholders could be disposed of by the directors under the vote of December 15 by which the dividend was declared.

In *Daland* v. *Williams,* the court deals with the dividend as a stock dividend, mainly on the ground that the option on the part of the trustees to take cash in lieu of stock did not in fact exist, because, by reason of the great excess in value of the stock over the nominal cash dividend it was an option which " no prudent man would avail himself of." But in this case no such element is shown to exist.

The case of *Daland* v. *Williams* was the ordinary case of stock issued to represent an amount already permanently invested by the corporation in its property for the purposes of its business, and distributed among its stockholders at the time of its creation to represent their interest in such permanent additions to their investment. But in the case at bar the stock had been created by a previous vote of October 27, by which the directors were authorized to dispose of it at such time and in such manner as they should see fit; while the cash dividend of December 15 was made in pursuance of a vote of stockholders instructing the directors to divide " the large amount of surplus earnings invested in the shares and property of the company ; " and the answer alleges that a large portion of this property was held as an investment, and not required for the use or improvement of the road.

It was clearly within the power of the corporation or directors to dispose of this property and divide the proceeds of the sale as a cash dividend. *Harvard College* v. *Amory,* 9 Pick. 446. This is, in substance, what they have done by their series of votes ; and they have set forth in them that it is for the purpose of dividing their surplus earnings in pursuance of the instructions of the stockholders, that this cash dividend is declared. The intention of the corporation is to be considered in deter-

mining whether the dividend is capital or income. *Harvard College* v. *Amory*, 9 Pick. 446. *In re Barton's Trust*, Law Rep. 5 Eq. 238.

3. The fact that the entire accumulation of earnings, out of which the old shares distributed *in specie* were purchased, and on which the new issue of stock was based, took place during the term of the trust, is entitled to consideration in determining whether the dividends shall go to the *cestui que trust* for life in this case. It is true that in *Brander* v. *Brander*, 4 Ves. 800, and *Paris* v. *Paris*, 10 Ves. 185, it was held that the inconvenience or impossibility of determining by investigation at what period the earnings were made, which resulted in an extraordinary dividend, precluded the establishment of a rule for apportioning such dividend according to the result of such investigation. This difficulty is recognized in *Minot* v. *Paine* as one of the reasons for adopting a simple and plain rule which shall dispense with the necessity of making such an investigation; although a different rule in this respect is adopted in other states. *Earp's Appeal*, 28 Penn. State, 368. *Simpson* v. *Moore*, 30 Barb. 637. *Van Doren* v. *Olden*, 4 C. E. Green, 176. But it does not follow, even from the doctrine of this court, that, in a case where the facts found in themselves render such investigation unnecessary, those facts shall not be entitled to their due weight; and in doing exact justice between tenant for life and remainderman, which the court will certainly endeavor to do so far as consistent with general rules, it may well be taken into account that a dividend, which a corporation undertakes to make as a dividend of its earnings, is in fact made wholly from its surplus income reserved during the period for which the tenant for life is entitled to its dividends.

CHAPMAN, C. J. We must regard the principle as settled, that stock dividends are to be regarded as principal, and cash dividends as income, and that the question whether dividends are to be deemed of principal or of income is to be determined by the votes of the corporation. *Minot* v. *Paine*, 99 Mass. 101. In the present case, we have to determine the character of the dividends in question.

The trustees held ninety shares of stock in the Old Colony and Newport Railway Company. The company made a regular semiannual dividend; but had a large amount of accumulated earnings, which had accrued subsequently to the death of the testator, and, instead of dividing the money, they invested it in the purchase of shares of their own stock. This they might legally do, taking the transfer to a trustee, instead of investing the money in the stocks of some other company, or lending it, in order that it might be earning some income until they should be ready to divide or otherwise dispose of it. In October 1863 they created 8849 new shares, of the par value of $100 each, to be issued and disposed of as the directors should think proper. On the 15th of the following December, they voted that the right of taking 5157 of these shares at par be offered to the shareholders, (not including the company in its corporate capacity,) at the rate of twenty per cent. of a new share for each old share; and if any shareholder should not avail himself of the privilege offered, before the 9th of the next January, the directors might sell such shares as were not taken. They also voted an extra dividend of forty per cent., one half in the shares which they had purchased as before stated, and one half in cash, derivable from the cash to be received from the sale of the newly created shares.

The purchased shares represented cash invested so as to earn an income. If the directors had sold them and divided the avails, there could have been no doubt that it was a cash dividend. Or if the investment had been in the stocks of other corporations, and the stocks divided, it would have been the same. As it was, the dividend did not affect the value of the shares upon which it was made, relatively to the whole capital stock of the company. The shares originally held by the trustees constituted the same fractional part of the whole capital stock after the dividend, as before. In substance, as well as in intent, it was a cash dividend, though it was not such in form; and the substance and intent must govern the transaction. *Daland* v. *Williams,* 101 Mass. 571.

The newly created shares constituted an increase of the cap-

ital stock of the company, and affected the relative value of the shares held by the trustees. They held a smaller proportion of the whole capital stock after the creation of the shares, than before. Shareholders were authorized by vote of the company to take each his proportion of these shares at par; or allow the directors to sell them, and take each his dividend out of the avails. One who took the shares took them as capital stock, and not as income; and one who permitted the directors to sell them, and took his proportion in cash, took the avails of capital stock which he had allowed to be sold. As the money to be received by the company for shares sold was not to be invested in improvements of the road or additions, but to be distributed in form of a dividend, the 5157 shares were simply an increase of the nominal value of the corporate property which constituted capital stock.

Thus it appears that the trustees, by neglecting to take the shares, which would have been capital and not income if they had taken them, and by allowing the directors to sell them and pay them the avails, have changed the form of the transaction, but not its substance. They have received what stands in place of a part of the capital stock of the road, as really as if they had received the shares and sold them. In substance, it is a dividend of newly created stock, with an option to have it turned into cash by a sale of the stock. It ought to be held by the trustees as representing capital, and not income.

*Decree accordingly.*