MORRIS GRAY & another, trustees, *vs.* AUGUSTUS HEMEN-
WAY & others.

Suffolk.    January 20, 1929. — September 30, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Capital and Income.    Trust.*

While, in determining rights as between life tenants and remaindermen,
the intention of the testator is the controlling consideration, if a
testator, resident in this Commonwealth, makes a gift of income with-
out defining what he intends the word to mean or prescribing the
method by which the income is to be determined, he would naturally
expect that the rights of beneficiaries in distributions on corporate
stock held in trust will be governed by the rules adopted by this
court as generally applicable to such cases.
A railroad corporation, which had acquired the title to and leases of coal
lands by purchase, partly with capital contributed by stockholders
and partly with earnings on capital, and had expended a large sum
of money in the improvement of the lands, sold them to a second
corporation for mortgage bonds, and, in 1927, transferred the bonds
to a third corporation under votes in pursuance of which the third
corporation issued its stock therefor and distributed such stock *pro
rata* among the stockholders of the railroad corporation and later
made a cash distribution of $3 per share to its stockholders.    A trustee
under a will of a Massachusetts testator which directed that income
from the trust should be distributed to certain life beneficiaries and
the principal should be otherwise distributed at the termination of
the trust, as the owner of shares of stock of the railroad corporation
received shares and a cash dividend from the third corporation, and
sought instructions.    *Held,* that
    (1) The distribution of the stock of the third corporation had the
characteristic of a dividend of income of the railroad corporation, and
as such should be treated by the trustee as income;
    (2) The cash dividend declared by the third corporation was income
in the hands of the trustee.

BILL IN EQUITY for instructions, filed in the Supreme
Judicial Court for the county of Suffolk on September 28,
1928, by the trustees under the will of Augustus Hemenway,
late of Milton.

The suit was reserved by *Pierce,* J., upon the pleadings
for determination by the full court.

*J. G. Palfrey*, for defendants interested in preservation of capital.

*C. A. Coolidge, Jr.*, for defendants entitled to income.

SANDERSON, J.　This is a bill brought by the trustees under the will of Augustus Hemenway, who died in 1876, for instructions as to the disposition of two distributions made to them on stock of the Delaware, Lackawanna and Western Railroad Company, a Pennsylvania corporation herein referred to as the Railroad Company, held by them as trustees. The case was reserved for the consideration of this court upon the bill and answers.

In his will Augustus Hemenway established a trust in the residue of his estate by the terms of which the trustees, after satisfying annuities, were to pay "all the remaining nett rents and income, during the continuance of this trust" to certain persons for life, and at the termination of the trust to convey the property to the testator's issue then living, and if such issue be then extinct to transfer the property to the testator's next of kin.

On August 25, 1927, the Railroad Company held $58,-500,000 in mortgage bonds of the Glen Alden Coal Company, a Pennsylvania corporation herein referred to as the Coal Company, and voted at a meeting of its board of managers to adopt a plan whereby the Railroad Company was to transfer to the Lackawanna Securities Company, a new corporation, a part of the surplus assets of the Railroad Company, namely, the bonds of the Coal Company amounting at par to $58,500,000, together with interest and the mortgage securing the bonds. The Securities Company was to issue all of its capital stock of no par value *pro rata* to the Railroad Company's stockholders in consideration of the bonds and mortgage. The plan thus outlined was carried out, and the resolution of the board of managers of the Railroad Company states that the bonds and mortgage were a part of its surplus assets. Their transfer was charged against surplus on the balance sheet of the Railroad Company, leaving a surplus after the transfer of more than $80,-000,000. As shown by the balance sheet the number of shares of stock of the Railroad Company and the capital

were the same after the transfer as before.   The petitioning trustees, as stockholders of the Railroad Company, received sixteen hundred and ten shares of the stock of the Securities Company.   Subsequently they sold ninety-eight of the shares and now hold the net proceeds together with the remaining fifteen hundred and twelve shares for the benefit of such persons as are entitled thereto.

The bonds transferred to the Securities Company were part of an original issue of $60,000,000 received by the Railroad Company in 1921 as the proceeds of a sale of the coal properties of the Railroad Company to the Coal Company made pursuant to a design to segregate the coal properties and business of the Railroad Company.   Prior to this sale these properties had been carried on the Railroad Company's books at a nominal figure bearing no relation to their cost or value.   The record does not state why they were so entered upon the books.   After the sale the proceeds were carried to surplus, and the balance sheet shortly thereafter showed a surplus of approximately $125,000,000.   The property thus conveyed by the Railroad Company consisted of thirteen thousand, two hundred and seventy-seven acres of coal lands owned in fee, together with leases of coal lands, and improvements and equipment of such lands, both owned and leased.   The books of the Railroad Company do not show the capital expenditures made in acquisition of coal properties, but the record states that upon the best available estimates the cost of coal lands owned in fee was upwards of $10,000,000, of which at least $8,000,000 represented capital contributed by stockholders or surplus later capitalized by the issue of stock dividends, and the allegation that the facts are according to the estimation was admitted.   It is a fair inference from the record that a part of the coal lands owned in fee and the leases of coal lands were acquired and paid for out of earnings.   About $43,000,000 had been expended from time to time in development, plant and equipment of the coal properties and charged to surplus.   Expenditures of that nature are a necessary part of the management of coal lands before they can be made available for current operation.   The

value of the bonds issued by the Coal Company in 1921 does not appear.

The first question is whether the distribution of the Securities Company stock is to be treated by the trustees as income for the beneficiaries for life or capital to be held for remaindermen. A further question is presented as to the disposition to be made of a cash distribution of $3 per share subsequently made by the Securities Company to its shareholders. The resolution as to the payment of this dividend merely provides that it shall be made to holders of record as of September 20, 1927. The sources from which this money was derived were in part a payment by the Coal Company of principal and in part a payment of interest on the bonds.

In determining the rights as between life tenants and remaindermen, the intention of the testator is the controlling consideration. *Reed* v. *Head*, 6 Allen, 174, 178. If a testator, resident in this Commonwealth, makes a gift of income without defining what he intends the word to mean or prescribing the method by which the income is to be determined (see *Mayberry* v. *Carey*, *ante*, 255, 258, 259), he would naturally expect the rights of beneficiaries in distributions on corporate stock held in trust to be governed by the rules adopted by this court as generally applicable to such cases.

It has frequently been said in our decisions that in determining the nature of a dividend the substance rather than the form will be considered, but this ordinarily does not mean that the court must conduct an examination into the accounts of a corporation and its history for the purpose of ascertaining the original sources of money or property distributed as a dividend or the time when money or property distributed was acquired. The substance and intent as shown by the votes are to be ascertained. *Rand* v. *Hubbell*, 115 Mass. 461. In *Minot* v. *Paine*, 99 Mass. 101, 107–108, the court said: "But neither courts nor trustees can investigate such matters with accuracy; and in many cases no investigation can be made. A trustee needs some plain prin-

ciple to guide him; and the *cestuis que trust* ought not to be subjected to the expense of going behind the action of the directors, and investigating the concerns of the corporation, especially if it is out of our jurisdiction." In *Rand* v. *Hubbell,* *supra,* the court, in an opinion by Chief Justice Gray, said at page 474: "It would be impracticable for the courts, in determining the comparative rights of different persons in a particular share of stock, to go behind the votes of the corporation and its directors, and investigate the accounts and affairs of the corporation, in order to ascertain how the corporation acquired the funds out of which the dividend was declared." In *Adams* v. *Adams,* 139 Mass. 449, 452, the court said: "The many cases in which stock dividends have been declared to be capital, and dividends payable in money to be income, all proceed upon the ground that it is the declaration of the dividend which creates it as a dividend; and the form of the declaration, as shown by the votes of the corporation, construed in the usual way, determines the character of the dividend, whether it is a distribution of capital stock or a division of profits." See *Gray* v. *Hemenway,* 206 Mass. 126, 128. "Everything is made to turn upon the action of the corporation." *D'Ooge* v. *Leeds,* 176 Mass. 558, 560. The difficulty of undertaking to trace with accuracy the history of an investment by a corporation made many years ago and the sources of all the money that went into or contributed to it, and the wisdom of adopting some rule, are well illustrated by the attempt of the petitioners to trace and state the history of the distribution under consideration.

The rule enunciated in *Minot* v. *Paine,* 99 Mass. 101, 108, to regard "cash dividends, however large, as income, and stock dividends, however made, as capital," has been followed in this Commonwealth as the general rule in determining the rights of life tenants and remaindermen. *Gardiner* v. *Gardiner,* 212 Mass. 508. *Coolidge* v. *Grant,* 251 Mass. 352. *Old Colony Trust Co.* v. *Shaw,* 261 Mass. 158, 168. In so far as courts of other jurisdictions have adopted a different rule, their decisions are not of controlling authority in this Commonwealth. The stock dividends to which reference is made in the rule quoted ordinarily mean shares in the corporation

declaring the dividend. *Gray* v. *Hemenway,* 212 Mass. 239, 241. By the issuance of such stock against net earnings they become capitalized. *Minot* v. *Paine,* 99 Mass. 101. *Daland* v. *Williams,* 101 Mass. 571. *Rand* v. *Hubbell, supra. Davis* v. *Jackson,* 152 Mass. 58. *D'Ooge* v. *Leeds,* 176 Mass. 558. *Hemenway* v. *Hemenway,* 181 Mass. 406. *Hyde* v. *Holmes,* 198 Mass. 287. *Gray* v. *Hemenway,* 206 Mass. 126. *Smith* v. *Cotting,* 231 Mass. 42. *Smith* v. *Dana,* 77 Conn. 543. The earnings so capitalized may already have been employed in the enlargement of the capital investment of the corporation and devoted to its physical plant. See *Talbot* v. *Milliken,* 221 Mass. 367, 368. When a dividend is declared of stock of another corporation, a distribution of such stock in its legal effect ordinarily is like a cash dividend. *Leland* v. *Hayden,* 102 Mass. 542. *Gray* v. *Hemenway,* 212 Mass. 239. *Gray* v. *Hemenway,* 223 Mass. 293. *Old Colony Trust Co.* v. *Jameson,* 256 Mass. 179. The dividend in the case at bar in stock of the Securities Company had the characteristics of a dividend of income. It diminished the property of the Railroad Company but left the proportional interest of each stockholder in the remaining corporate property exactly what it had been before. *Leland* v. *Hayden,* 102 Mass. 542, 551. *Gray* v. *Hemenway,* 212 Mass. 239, 241. *Old Colony Trust Co.* v. *Jameson,* 256 Mass. 179, 182. The stock of the Securities Company if retained by the trustees would not be an investment in the Railroad Company. *Lyman* v. *Pratt,* 183 Mass. 58. Until a distribution is ordered, all assets held by a corporation as a part of its corporate property are capital so far as the rights of life tenant and remaindermen are concerned. *Rand* v. *Hubbell,* 115 Mass. 461, 476. The question, whether accumulated profits once devoted to "permanent capital purposes" can be set free and distributed as income was referred to but not decided in *Hemenway* v. *Hemenway,* 181 Mass. 406, 411, and in *Gray* v. *Hemenway,* 212 Mass. 239, 243.

Apart from special limitations in its charter or by statute, there would seem to be no sufficient reason for a fixed rule that an investment of capital assets of a corporation, whatever their source, in a wasting property like a coal mine or in

other real property used in the business of the corporation should irrevocably mark that property as a capital asset. So long as it remains in the form of real estate it is not available for distribution. But in principle there should be no difference in respect to capital assets between an expenditure for real and one for personal property. It is desirable that power be imposed in the corporation to convert assets into such form as will best promote its legitimate objects. As a general rule, assets do not change their character by investment beyond the general powers of directors to alter them. *Gray* v. *Hemenway*, 223 Mass. 293, 296. *Smith* v. *Cotting*, 231 Mass. 42, 48. *Old Colony Trust Co.* v. *Jameson, supra.* The court said in *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 262 Mass. 1, 5–6: "The investments of that company for many years last past were exclusively in personal property. Such investments might have been readily changed and divided in whole or in part without material alteration in the kind of business conducted by that company."

Upon the record there would seem to be no sufficient ground for reaching the conclusion that the corporation was not justified in carrying to the surplus account the proceeds of the coal properties in 1921 and in declaring a dividend from surplus in 1927. See *Old Colony Trust Co.* v. *Shaw, supra.* The dividend clearly appears to have been intended by the corporation as a partial distribution of surplus. *Rand* v. *Hubbell*, 115 Mass. 461. *Gray* v. *Hemenway*, 212 Mass. 239, 243. No question is raised as to the good faith of the officers. *Equitable Life Assurance Society of the United States* v. *Union Pacific Railroad*, 212 N. Y. 360, 371, 372. But it is not necessary that the case rest on that ground alone for if it be assumed, without so deciding, that there had been an "effectual capitalization," within the meaning of those words in *Hemenway* v. *Hemenway*, 181 Mass. 406, 411, of the whole or a part of the coal properties sold, and that this character was likewise impressed on the bonds received in exchange, it does not follow that the bonds, or the stock received for them, could not be made available for the payment of a dividend from surplus, provided their equivalent in value remained in the

surplus or otherwise continued to be held as assets of the corporation so that the capital would not be impaired. See *Hemenway* v. *Hemenway, supra; Gray* v. *Hemenway,* 212 Mass. 239, 242; *Gray* v. *Hemenway,* 223 Mass. 293; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 262 Mass. 1. So long as the assets of a solvent corporation are equal to, or in excess of, its liabilities plus its original capital, with such additions thereto as may have been made, the capital cannot be said to be impaired. See *Lapham* v. *Tax Commissioner,* 244 Mass. 40, 46. The dividend in the case at bar caused no impairment of capital. The surplus remaining after the distribution was more than equal to the face value of the bonds received from the sale of the coal properties and, so far as appears, to the actual value of those bonds. See *Rand* v. *Hubbell,* 115 Mass. 461, 474. The case is the same in principle as it would be if a cash dividend had been declared from surplus and the Railroad Company had continued to hold the bonds. If the capital of the corporation is not impaired, the principal of the trust fund in so far as it consists of shares in the corporation cannot be said to be depleted. The distribution of stock of the Securities Company was in no proper sense a distribution in partial liquidation nor a step in winding up the corporate affairs, either of the Railroad Company or of the Securities Company, and cases such as *Gifford* v. *Thompson,* 115 Mass. 478, and *Brownell* v. *Anthony,* 189 Mass. 442, holding dividends in liquidation to be capital, do not apply. See *Old Colony Trust Co.* v. *Jameson,* 256 Mass. 179, 183.

In the case of *Heard* v. *Eldredge,* 109 Mass. 258, a part of the real estate of a wharf company, whose right to own real estate was within strictly defined limits, was taken by eminent domain, and a part of the damages paid for the taking was distributed as a dividend. The officers of the corporation made no declaration that the dividend was paid from surplus; the source of the dividend was easily traced, and upon the evidence appearing in the original record the finding would have been justified that the dividend could not have been paid from surplus without impairing capital. The court apparently treated the distribution as a payment in

the nature of a partial liquidation. In the course of the opinion by Chief Justice Chapman, who also wrote the opinion in *Minot* v. *Paine, supra,* the court said at page 260: "If the city had taken the whole of the company's land, it would be plain that they had taken its capital. A dividend of the money received for it would be a dividend of capital, of which the tenant for life ought to have the income only. The taking of a large part of the land makes no substantial difference in principle. It converts a part of the capital from real estate into personal." The payment in *Heard* v. *Eldredge* has been referred to in later decisions as one made from capital. *Talbot* v. *Milliken,* 221 Mass. 367, 369. *Gray* v. *Hemenway,* 223 Mass. 293, 296. That case is not authority for the proposition that the stock distributed in the case at bar must be held to be a distribution of capital.

Upon the admitted facts we are of opinion that the stock of the Securities Company held by the petitioners, and the proceeds of stock sold, belong to the life tenants, and the distribution of $3 a share, having been derived in part from the payment of principal and in part from the payment of interest on the bonds, also belongs to the parties entitled under the will to income. A decree is to be entered that the fifteen hundred and twelve shares of stock of the Lackawanna Securities Company, the proceeds of the sale by the trustees of ninety-eight shares sold, and the dividend of $3 a share are income to be distributed to the life tenants in accordance with the terms of the will. Costs as between solicitor and client are to be awarded in the discretion of the single justice, to be charged to the principal of the fund.

*Ordered accordingly.*