Adele Virginia Harris Whiting, Appellee, v. Eleanor Whiting Hagey et al., Consolidated with Adele Virginia Harris Whiting, Appellee, v. Genevieve Paton Harris et al. Graham Whiting et al., Appellants, by Samuel Grossman, Guardian Ad Litem.

Gen. No. 38,606.

Opinion filed November 10, 1936. Rehearing denied November 24, 1936.

SAMUEL GROSSMAN, guardian ad litem, *pro se;* LOUIS N. GROSSMAN and BERNARD A. STOL, of Chicago, of counsel.

WILSON & MCILVAINE, of Chicago, for appellees.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

A complaint in chancery was filed by plaintiff, Adele Virginia Harris Whiting, alleging the existence of a certain trust created by her (hereinafter for convenience referred to as the Whiting trust) in which she reserved a life interest and praying for an accounting and a construction of the trust with reference to the distribution of certain assets between her and the remaindermen, who were her four children, two of whom were minors, and her two minor grandchildren. A similar separate action was filed by plaintiff, praying for the same relief with reference to another trust created by the last will of her mother, Eleanor S. Harris (hereinafter for convenience referred to as the Harris trust). The same questions being involved in both cases, they were consolidated in the trial court. The trustee in each case filed an answer praying for instructions of the court. The cause was referred to a master in chancery, who filed a report in plaintiff's favor. The exceptions of the guardian *ad litem* of the minor remaindermen to the report were overruled and a decree entered in accordance with the master's report. By this appeal the minor remaindermen by their guardian *ad litem* seek to reverse certain portions of the decree, no question being raised as to the accounting features of same.

The undisputed facts are substantially that plaintiff is the life beneficiary under two trusts, each of which consisted of one-third of the residuary estate of her mother, Eleanor S. Harris, deceased; that under her mother's will plaintiff was given the net income for life of one-third of the residuary estate and was also given the net income of another one-third of her mother's residuary estate until she attained the age of 35 years, at which time she was to receive the corpus of this one-third; that shortly before attaining this age she elected to create a trust of the corpus she was to

then receive and by her trust agreement dated November 21, 1923, conveyed said corpus to her father, Graham H. Harris, as trustee, reserving to herself the life income from same; that the Continental Illinois National Bank and Trust Company of Chicago is successor trustee under both trusts to Graham H. Harris, deceased; that the four children and two grandchildren of plaintiff are successor beneficiaries of the net income of the trust estates and also are remaindermen interested in the ultimate disposition of the principal of both trusts; that prior to March 18, 1929, each of the trusts included among its assets 2,275 shares of stock of the Continental National Bank and Trust Company of Chicago; that March 18, 1929, the Continental Illinois Bank and Trust Company (successor to the Continental National Bank and Trust Company of Chicago) consolidated with the Illinois Merchants Trust Company; that the consolidated bank commenced to transact business March 18, 1929, under the name of Continental Illinois Bank and Trust Company, with assets including, among other items, capital of $75,000,000, surplus of $65,000,000, undivided profits of $4,060,156.42 and reserve for contingencies, $10,000,000; that when the books of the constituent Continental Bank were closed March 16, 1929, that bank had a capital of $35,000,000, surplus of $30,000,000 and undivided profits aggregating $26,224,144.47; that when the books of the Illinois Merchants Trust Company were closed March 16, 1929, that bank had a capital of $17,307,700, surplus of $30,000,000 and undivided profits aggregating $35,057,027.44; that, shortly prior to the consolidation, certain agreements were entered into by the directors and stockholders of both banks, which provided for their consolidation and in addition thereto for an affiliate securities company to be organized and known as the Continental Illinois Company (hereinafter for convenience referred to as the securities company);

that said agreements also provided that such affiliate was to be provided with assets of $20,000,000; that at the time the consolidation was completed there was transferred to the securities company $4,407,700 from funds acquired by the consolidated bank from excess subscriptions to the capital stock of the constituent banks and $15,592,000 or 77.96 per cent of said $20,000,000 was transferred from other assets of the bank traceable to surplus and undivided profits acquired from the earnings of the constituent banks and available on the date of the consolidation for distribution to stockholders as earned surplus; that upon the commencement of business by the consolidated bank its statement of condition dated March 18, 1929, gave the capital of the securities company as $20,000,000 and recited that its capital stock was owned by the stockholders of the consolidated bank; that immediately prior to the consolidation both banks had surpluses in excess of $15,592,000; that the assets of the securities company, including the said $15,592,000 were segregated from the assets of the consolidating banks under certain "modified agreements for the deposit of stock" of September 7, 1928; that pursuant to the terms of such deposit agreements said assets were set apart and transferred to the securities company March 18, 1929, as heretofore stated, and were not thereafter carried on the books of the consolidated bank as assets thereof; that all the stock of the securities company was placed in trust for the benefit of the bank stockholders and that the declaration creating this trust and an indorsement on the certificates of the stock of the bank provided that the capital stock of the affiliate could not be transferred separate from the stock of the bank; that each of the shares of bank stock also bore an indorsement that such share carried with it a proportionate beneficial interest in the capital stock of the securities company; that on October 15,

1932, the Continental Illinois Bank & Trust Company of Chicago was converted from an Illinois banking corporation into a national banking association, under its present name of Continental Illinois National Bank and Trust Company of Chicago (hereinafter for convenience referred to as the bank); that the National Banking Act of 1933 made it obligatory upon national banks to sever their connections with affiliated securities companies, including those existing through control of same by shareholders of such banks, within one year from the passage of the act; that on November 8, 1933, the board of directors of the securities company adopted a resolution providing for its liquidation and the distribution of its assets to the owners thereof; that, thereafter, this resolution was approved by the holders of stock of that company who were the trustees for the stockholders of the bank; that December 20, 1933, the board of directors of the bank adopted a resolution providing that the outstanding certificates of common stock of the bank should be canceled and exchanged for new certificates of stock of a reduced par value, which should be issued forthwith and bear no reference to beneficial ownership of stock in the securities company; that the resolution last mentioned further provided that the trustees of the capital stock of the securities company be requested to take action to sever the beneficial ownership and transferability thereof from the certificates of stock of the bank; that such action was taken and there was delivered to the bank stockholders pro rata certificates of beneficial ownership in the stock of the securities company entirely independent of the bank stock; that March 12, 1934, the stockholders of the securities company by resolution consented to dissolve that corporation and authorized and directed its directors and officers to take all steps necessary to carry such dissolution into effect; that, thereafter, in December, 1934,

the trustee of both the Whiting and Harris trusts received $4,550, together with 3,033 shares of capital stock of the Chicago Corporation as the proportionate share of each of these trusts in the assets of the securities company; and that this distribution was made on the basis of $2 in cash plus one and one-third shares of Chicago Corporation stock for each share of bank stock, each of said trusts holding 2,275 shares of bank stock as hereinbefore stated.

By its decree the trial court found that, inasmuch as $15,592,000 or 77.96 per cent of the capital of the securities company was traceable to earned surplus and undivided profits of the consolidating banks and there had been distributed to the bank's stockholders certificates of beneficial ownership of the stock of the affiliate, such distribution constituted a dividend of income upon the bank's stock and that upon a liquidating distribution of the assets of the securities company the life beneficiary was entitled to receive from the trustee 77.96 per cent of same as income.

The subscribers for stock in the consolidating banks agreed that $4,407,700 excess stock subscriptions might be invested in stock of the securities company and it is conceded, inasmuch as that was new money invested as capital, that in the distribution of the assets of the securities company that part of the dividend apportionable to the amount of excess stock subscriptions properly belonged to the corpus of the trusts.

Therefore, the only question raised by this appeal is whether that portion of the dividend declared upon the assets of the securities company and received by the trustee upon the bank shares held in both the Whiting and Harris trusts, which was proportionate to the $15,592,000 bank surplus invested in the $20,000,000 capital of that company for the benefit of the bank's stockholders, is to be treated as income which should go to plaintiff, the life tenant of both

trusts, or as capital belonging to the corpus of the trusts for the remaindermen.

The guardian *ad litem* on behalf of the minor defendants contends that although $15,592,000 or 77.96 per cent of the $20,000,000 capital of the securities company was traceable to earned surplus and undivided profits of the consolidating banks, the method by which the securities company was formed and all the circumstances connected with its formation, existence, liquidation and dissolution constituted a capitalization by the bank of such surplus and undivided profits, so that the assets of the securities company comprising the liquidating dividend paid the trustee became part of the corpus of the trusts for the benefit of the remaindermen.

Plaintiff's theory is that although the directors of the bank with the consent of its stockholders invested the aforementioned sum of $15,592,000 in the capital of the securities company, a distribution was nevertheless later made to the stockholders of the bank, and that since that particular money came from the earned surplus of the banks, such part of the assets of the securities company paid out by way of the dividend in question which was apportionable to this earned surplus put into its capital belongs to the life beneficiary of the trusts because it is a dividend declared upon surplus and earned profits as distinguished from a distribution of capital.

While the conflict over the right to dividends as between a life tenant and a remainderman has given rise to a great diversity of opinion, we think that under the facts of this case no other conclusion can be reasonably reached than that such part of the assets of the securities company paid to the trustee of both the Whiting and Harris trusts upon the dissolution of the affiliate as were proportionate to the $15,592,000 surplus earnings of the constituent banks invested in the capital of

such affiliate for the benefit of the bank stockholders, should be considered income belonging to plaintiff, the life tenant.

The Massachusetts rule, which is followed in this State, is that whether a dividend is to be regarded as income and, as such, property of a life tenant, or as capital belonging to the remainderman, is to be determined by the substance and intent of the corporation as manifested by its vote or resolution. (*Minot v. Paine,* 99 Mass. 101; *Leland v. Hayden,* 102 Mass. 542; *Rand v. Hubbell,* 115 Mass. 461; *Lyman v. Pratt,* 183 Mass. 58; *DeKoven v. Alsop,* 205 Ill. 309; *Blinn v. Gillett,* 208 Ill. 473; *Billings v. Warren,* 216 Ill. 281; *Lloyd v. Lloyd,* 341 Ill. 461.)

In *Gibbons v. Mahon,* 136 U. S. 549, in passing upon the question as to whether a dividend of new shares of stock in a corporation was to be treated as a dividend to which the life tenant was entitled as income or was to be treated as an increase of capital of the trust fund, the Supreme Court of the United States said at pp. 558, 559:

"Money earned by a corporation remains the property of the corporation, and does not become the property of the stockholders, unless and until it is distributed among them by the corporation. The corporation may treat it and deal with it either as profits of its business, or as an addition to its capital. Acting in good faith and for the best interests of all concerned, the corporation may distribute its earnings at once to the stockholders as income; or it may reserve part of the earnings of a prosperous year to make up for a possible lack of profits in future years; or it may retain portions of its earnings and allow them to accumulate, and then invest them in its own works and plant, so as to secure and increase the permanent value of its property.

"Which of these courses shall be pursued is to be determined by the directors, with due regard to the

condition of the company's property and affairs as a whole; and, unless in case of fraud or bad faith on their part, their discretion in this respect cannot be controlled by the courts. . . .

"Reserved and accumulated earnings, so long as they are held and invested by the corporation, being part of its corporate property, it follows that the interest therein, represented by each share, is capital, and not income, of that share, as between the tenant for life and the remainderman, legal or equitable, thereof.

"Whether the gains and profits of a corporation should be so invested and apportioned as to increase the value of each share of stock, for the benefit of all persons interested in it, either for a term of life or of years, or by way of remainder in fee; or should be distributed and paid out as income, to the tenant for life or for years, excluding the remainderman from any participation therein, is a question to be determined by the action of the corporation itself, at such times and in such manner as the fair and honest administration of its whole property and business may require or permit, and by a rule applicable to all holders of like shares of its stock; and cannot, without producing great embarrassment and inconvenience, be left open to be tried and determined by the courts, as often as it may be litigated between persons claiming successive interests under a trust created by the will of a single shareholder, and by a distinct and separate investigation, through a master in chancery or otherwise, of the affairs and accounts of the corporation, as of the dates when the provisions of the will of that shareholder take effect, and with regard to his shares only.

"In ascertaining the rights of such persons, the intention of the testator, so far as manifested by him, must of course control; but when he has given no special direction upon the question as to what shall be considered principal and what income, he must be pre-

sumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares.

"Therefore, when a distribution of earnings is made by a corporation among its stockholders, the question whether such distribution is an apportionment of additional stock representing capital, or a division of profits and income, depends upon the substance and intent of the action of the corporation, as manifested by its vote or resolution; and ordinarily a dividend declared in stock is to be deemed capital, and a dividend in money is to be deemed income, of each share."

The fundamental principle involved is whether there was a distribution of earnings, profits or accumulations as income to the stockholders of the bank. In the instant case $15,592,000 of the $20,000,000 capital of the securities company admittedly represented earnings and undivided profits of the constituent banks available for distribution to the stockholders of same as earned surplus at the time of the consolidation. The very agreements under which the constituent banks were merged contemplated and provided for the withdrawal of this portion of the earned surplus of those banks from the assets of the consolidated bank and for its investment in the capital of the securities company for the benefit of the consolidated bank's stockholders when the merger was completed. From the moment the bank set apart and transferred the above amount of the surplus of the constituent banks to the affiliate as part of its capital, it was irrevocably segregated from the assets of the bank and beyond the power and control of the bank to recall as part of its assets. If, upon its organization of the securities company and transfer of capital to it as hereinbefore set forth, the bank had caused the affiliate to declare

and pay a dividend of its stock pro rata to the stockholders of the bank instead of placing all of such stock in trust for the pro rata benefit of the bank stockholders, there would be no room for serious controversy in this cause. Such a dividend has been conclusively determined to be income belonging to the life tenant. (*Old Colony Trust Co. v. Jameson*, 256 Mass. 179, 152 N. E. 52; *Gray v. Hemenway*, 268 Mass. 515, 168 N. E. 102; *Lloyd v. Lloyd, supra.*)

The capital of the securities company having been segregated must not be confused with the capital assets of the bank, of which they formed no part after such segregation, and it must be borne in mind that it was not beneficial interests in or certificates of beneficial ownership of stock of the bank that were distributed to the bank stockholders preceding the liquidation of the securities company but beneficial interests in and certificates of beneficial ownership of the stock of the affiliate. If the $15,592,000 surplus remained in the bank's assets and the banking corporation itself was thereafter terminated or dissolved, a different question would be presented. Then would follow a pro rata distribution of the capital of the bank remaining after the payment of its debts, which would, of course, belong to the corpus of the trust estate.

It must be conceded that all that the remaindermen are entitled to have conserved for their benefit under the Whiting and Harris trusts is the corporate property of the bank as represented by the certificates of stock comprising the principal of the respective trusts and any additions thereto by way of dividends of stock of the bank, which in this State have been held to be capital. It is inconceivable how the distribution in question in the case at bar proportionate to the $15,592,000 surplus earnings irrevocably transferred to the securities company as capital could be made the basis of a stock dividend predicated upon an increase of the bank's capital

when such surplus earnings had long since ceased to be assets of either of the constituent banks or the consolidated bank and were not invested in the capital of the affiliate for the bank's benefit but were specifically invested therein as earned surplus of the constituent banks for the benefit of the bank's stockholders.

Even though when the securities company was incorporated no actual dividend of its stock pro rata to the bank's stockholders was declared, the declaration of trust of February 27, 1929, in placing all the stock of the affiliate in trust for the bank's stockholders exclusively as part of the plan of consolidation of the constituent banks, manifested an intention to treat the capital of the affiliate to the extent of $15,592,000 as income. For several years the beneficial interests of the bank's stockholders in the stock of the securities company were inseparable from their bank stock, but then the bank was compelled by the National Banking Act of 1933 to sever its relations with the securities company. Thereupon the affiliate delivered to the stockholders of the bank, including the trustee of the Whiting and Harris trusts, certificates of beneficial ownership of the stock of the securities company entirely independent of their bank stock. While there was no actual division of the securities company stock, the action of the directors of that company, approved by its stockholders at the instance of the bank, in delivering certificates of beneficial ownership pro rata of the stock of the affiliate was, in our opinion, tantamount to the declaration of a dividend of that stock as income. Finally, in March, 1934, the securities company having passed through several disastrous years of the depression, its officers and stockholders proceeded to take the necessary steps to dissolve it. As a result of its liquidation the trustee of both the Whiting and Harris trusts, as hereinbefore stated, received $4,450 in cash and 3,033 shares of capital stock of the Chicago Corporation as the proportion-

ate share of each of these trusts in the assets of the securities company, being at the rate of $2 in cash plus one and one-third shares of Chicago Corporation stock for each of the 2,275 shares of bank stock held in each trust. Inasmuch as this distribution, whether we term it an ordinary dividend or a liquidating dividend, was of assets of a corporation whose capital to the extent of 77.96 per cent consisted of earned surplus of the constituent banks irrevocably segregated from the consolidated bank's assets and not only intended to be but actually invested as income for the use and benefit of the bank's stockholders, reason and authority preclude its being treated otherwise than as income to the extent of 77.96 per cent. As to the distribution of the beneficial interests in the stock of the affiliate and then of the certificate of beneficial ownership of such stock and as to the ultimate distribution of stock of the Chicago Corporation as part of the assets of the securities company to the bank's stockholders, the established rule is that when a dividend is declared of stock in other corporations, distribution of such stock in its effect ordinarily is like a cash dividend. (*Leland v. Hayden,* 102 Mass. 542; *Gray v. Hemenway, supra.*)

Notwithstanding that the trustees of the securities company stock held same and no actual distribution of that stock was made, we are impelled to hold that the allotment of beneficial interests therein to the bank stockholders, even though inseparable from their bank stock, had the characteristics of a dividend of income to the extent of earned surplus of the constituent banks invested in the capital of the affiliate. When the certificates of beneficial ownership of the stock of the securities company were distributed independently of the bank stock, the characteristics of a dividend of income were even more evident. When the actual dividend was declared and paid we think that beyond question it had the characteristics of a dividend of income to the extent

heretofore indicated and as such should be treated by the trustee of the Whiting and Harris trusts as income.

In *Old Colony Trust Co. v. Jameson, supra,* shares of common stock of the General Electric Company were held by trustees, the net income to be paid to a life tenant and the corpus to remaindermen. The General Electric Company, which owned all the common stock and 300 shares of the preferred stock of the Electric Bond & Share Company, reorganized by separating from its other assets all of the stock of the Electric Bond & Share Company which it owned and held. Under its plan of reorganization it created a new corporation known as the Electric Bond & Share Securities Corporation, to which it transferred all its stock in the Electric Bond & Share Company and in consideration of such transfer the new corporation issued all its stock pro rata to the holders of the common stock of the General Electric Company. In that case the court was called upon to determine whether the shares of stock of the new corporation distributed to the stockholders of the General Electric Company were to be paid to the life tenants as income or treated as capital and held by the trustees in the corpus of the trust estate. In concluding that the shares of stock of the new corporation received by the trustees must be treated as income, the court said at pp. 182, 183:

" 'A simple rule is, to regard cash dividends, however large, as income, and stock dividends, however made, as capital.' *Minot v. Paine,* 99 Mass. 101. But as shown by the memorandum of findings and rulings of the judge of probate, the case at bar cannot be distinguished from *Gray v. Hemenway,* 212 Mass. 239. It is a controlling authority and governs the decision of the case. In *Gray v. Hemenway* the Delaware, Lackawanna and Western Railroad Company, a Pennsylvania company, invested part of its surplus in the stock of the Lackawanna Railroad Company, a New

Jersey corporation. The Pennsylvania company declared a dividend payable in the stock of the New Jersey corporation. It was held that the dividend was to be treated as income, following *Leland v. Hayden,* 102 Mass. 542. Mr. Justice Sheldon, speaking for this court in *Gray v. Hemenway, supra,* at page 241 said, 'Here, as in that case, the shares distributed represented an investment of accumulated profits . . .if the directors . . . had sold the shares and divided the proceeds among their stockholders, there could have been no doubt that it was a cash dividend and belonged, as between tenants for life and remaindermen, to the former.' The dividend in question, like the dividend in *Gray v. Hemenway,* was not a stock dividend, properly so called; see *Coolidge v. Grant,* 251 Mass. 352; 'It left the corporation the poorer by what was given to the stockholders; it left the proportional interest of each stockholder in the diminished quantum of the corporate property exactly what it had been.' *Gray v. Hemenway, supra.* These dividends of the stock in another corporation were not a distribution of property in dissolution of the corporation, as in *Brownell v. Anthony,* 189 Mass. 442; neither does the principle established in *D'Ooge v. Leeds,* 176 Mass. 558, apply. The transaction by which the stock of the Securities Corporation was distributed is to be treated as a cash dividend payable to the life tenant. *Leland v. Hayden, supra; Gray v. Hemenway, supra; Gray v. Hemenway,* 223 Mass. 293.''

In *Gray v. Hemenway,* 268 Mass. 515, 168 N. E. 102, a railroad company held $58,500,000 of the mortgage bonds of a coal company and voted at a meeting of its board of managers to adopt a plan whereby the railroad company was to transfer to a securities company, a third corporation, a part of the surplus assets of the railroad company, consisting of the bonds of the coal company heretofore mentioned and the mortgage se-

curing same. The securities company was to issue all its capital stock pro rata to the railroad company's stockholders in consideration of the bonds and mortgage. This plan was carried out and the resolution of the board of managers of the railroad company stated that the bonds and mortgage were a part of its surplus assets and so charged on its books, leaving a surplus after the transfer of more than $80,000,000. The number of shares of stock of the railroad company and its capital were the same after the transfer of the bonds as before. In its determination of the question as to whether the distribution of the securities company stock was to be treated by a trustee as income for the beneficiaries for life or capital to be held for remaindermen, the court held that the distribution of the stock of the securities company to the stockholders of the railroad company had the characteristics of a dividend of income of the railroad company and as such should be treated by the trustee as income.

In *Lloyd v. Lloyd, supra,* where the Tribune Company erected a building which when it was no longer needed in its business it sold to a newly organized corporation for 40,600 shares of its stock that were distributed pro rata among the stockholders of the Tribune Company as a dividend from accumulated earnings, pursuant to resolutions by both its stockholders and directors, the stockholders immediately selling the stock under a previous arrangement for $100 a share, it was held that the distribution amounted to one of income and that a stockholder who was a trustee must pay the cash received to the life beneficiary and not to the corpus for the benefit of a remainderman.

From the figures hereinbefore set forth detailing the amount of the capital, surplus and undivided profits of the constituent banks immediately prior to the con-

solidation and of the consolidated bank when it commenced business March 18, 1929, it clearly appears that the investment of $15,592,000 surplus of the constituent banks in the capital of the securities company for the benefit of the bank's stockholders did not impair the capital of the bank.

Other points have been urged but in the view we take of this cause we do not deem it necessary to discuss them. Upon full consideration of the case, on reason and authority we are of the opinion that the decision of the court below is correct. The decree of the circuit court is affirmed.

*Affirmed.*

FRIEND and SCANLAN, JJ., concur.